ARROWOOD, Judge.
*477 *804 Respondent-father appeals from an order terminating his parental rights in the minor child "Alex."[1] Because the trial court lacked personal jurisdiction over respondent-father, we vacate the order.
I. Background
In March 2016, New Hanover County Department of Social Services ("DSS") obtained non-secure custody of three-year-old Alex and filed a *805 juvenile petition alleging he was neglected and dependent. At the time the petition was filed, Alex was living with respondent-father and his girlfriend, Ms. H. Respondent-mother had not been in contact with Alex for two years, and her location was unknown. DSS alleged it had received a series of child protective services ("CPS") reports regarding substance abuse by respondent-father, domestic violence by Ms. H., and general "parenting concerns." Respondent-father acknowledged to DSS that he was taking Ms. H.'s subutex prescription and "needed the Department to take custody of [Alex] so he could go to substance abuse treatment." However, he declined an inpatient treatment bed arranged by DSS and did not seek outpatient treatment. Ms. H., who was Alex's primary caretaker, had served time in prison for felony child abuse and had additional convictions for cocaine possession and "multiple domestic violence related charges."
Based on the parties' stipulation to the petition's allegations, the trial court adjudicated Alex neglected and dependent by order entered 29 April 2016. The court ordered respondent-father to comply with conditions of his Family Services Agreement ("FSA") with DSS by following all recommended mental health and substance abuse treatment; submitting to random drug screens requested by DSS or the guardian ad litem ("GAL"); taking all medications as prescribed; completing an approved parenting course; maintaining stable employment and housing; and attending scheduled visitations with Alex. If respondent-father chose to remain in a relationship with Ms. H., the court ordered them to attend couples counseling and follow any recommendations. It further ordered Ms. H. to complete an approved parenting course.
In January 2017, the trial court established concurrent permanent plans for Alex of reunification with respondent-mother and reunification with respondent-father. Based on respondents' lack of progress with their FSAs, the court on 2 June 2017 changed the concurrent permanent plans to adoption and reunification and ordered DSS to file for termination of parental rights.
DSS filed a petition to terminate the parental rights of respondent-mother and respondent-father on 19 June 2017. On 11 July 2017, the trial court granted a motion to withdraw filed by respondent-father's appointed counsel in the neglect and dependency proceeding. By order entered 18 July 2017, the court appointed counsel Dawn Oxendine to represent respondent-father in the termination proceeding. See N.C. Gen. Stat. § 7B-1101.1(a) (2017).
*806 The trial court held a hearing on the petition to terminate respondent-father's parental rights on 11 September 2017.[2] When respondent-father did not appear at the hearing, the court released his appointed counsel, Ms. Oxendine. The court heard testimony from the CPS worker and foster care social worker assigned to Alex's case and adjudicated the existence of grounds for termination of respondent-father's parental rights for neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2017). The court received the GAL's report with regard to disposition and determined that Alex's best interest would be served by termination. It entered its order terminating respondent-father's parental rights on 11 October 2017. Respondent-father filed timely notice of appeal.
*478 II. Discussion
On appeal, respondent-father challenges the trial court's conclusion that it obtained personal jurisdiction over him in the termination proceeding. He contends he was not properly served with the petition and summons in accordance with N.C. Gen. Stat. § 1A-1, Rule 4(j) (2017). We agree with respondent-father that the trial court lacked personal jurisdiction in this cause and that its order must be vacated.
The relevant law was summarized by this Court in In re C.A.C. , 222 N.C. App. 687, 731 S.E.2d 544 (2012) :
Upon the filing of a petition to terminate parental rights, N.C. Gen. Stat. § 7B-1106(a)(1) (201[7] ) requires that a summons regarding the proceeding be issued to the parents of the juvenile. Issuance of the summons is necessary to obtain personal jurisdiction over the parents. "Service of the summons shall be completed as provided under the procedures established by G.S. 1A-1, Rule 4(j)." N.C. Gen. Stat. § 7B-1106(a) (201[7] ). However, when the whereabouts of a parent are unknown, service may be by publication in accordance with N.C. Gen. Stat. § 1A-1, Rule 4(j1).
Id. at 688, 731 S.E.2d at 545 (citations omitted).[3]
*807 Here, a summons was issued on the date the petition was filed by DSS, 19 June 2017, but was returned unserved on respondent-father on 12 July 2017. [ The deputy sheriff who attempted to serve respondent-father noted on the summons that respondent-father "does not stay" at the address listed on the summons or at a second address tried by the deputy.
After failing to obtain personal service, DSS attempted to serve respondent-father by publication under Rule 4(j1) by publishing a notice for three consecutive weeks in The Duplin Times between 27 July 2017 and 10 August 2017. When respondent-father did not appear at the termination hearing on 11 September 2017, counsel for DSS advised the trial court as follows:
Your Honor, we're here for the termination of parental of rights on [Father] on [Alex]. We do have service by publication on the father. We attempted at least three or four addresses to serve him personally. We were under the impression that he lives in Duplin County I believe, and the social worker has made many visits out there. He has lived there, we've been unable to get personal service. It was returned from the Sheriff's Department saying that he was not living there, so we did serve via publication.
The court found that respondent-father "was served with Notice of the Termination of Parental Rights Proceeding by publication in Duplin County ... pursuant to the North Carolina Rules of Civil Procedure Rule 1A-1, Rule 4 ( [j1] )," and that "[a]ll Summons, Service of Process and Notice requirements have been met as to Respondent-Father."
"A defect in service of process by publication is jurisdictional, rendering any judgment or order obtained thereby void." Fountain v. Patrick , 44 N.C. App. 584, 586, 261 S.E.2d 514, 516 (1980) (citing Sink v. Easter , 284 N.C. 555, 202 S.E.2d 138 (1974) ). The following requirements are set forth in Rule 4(j1) :
A party that cannot with due diligence be served by personal delivery, registered or certified mail, or by a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) may be served by publication. ... If the party's post-office address is known or can with reasonable *808 diligence be ascertained, there shall be mailed to the party at or immediately prior to the first publication a copy of the notice of service of process by publication. The mailing may be omitted if the post-office address cannot *479 be ascertained with reasonable diligence. Upon completion of such service there shall be filed with the court an affidavit showing the publication and mailing in accordance with the requirements of G.S. 1-75.10(a)(2), the circumstances warranting the use of service by publication, and information, if any, regarding the location of the party served.
N.C. Gen. Stat. § 1A-1, Rule 4(j1). "Failure to file an affidavit showing the circumstances warranting the use of service by publication is reversible error." Cotton v. Jones , 160 N.C. App. 701, 703, 586 S.E.2d 806, 808 (2003) (citation omitted).
The record before this Court contains "no affidavit showing the circumstances warranting a use of service by publication, or showing [DSS's] due diligence in attempting to locate defendant." Id . Although counsel for DSS filed an "Affidavit of Service by Publication" on 16 August 2017, the affidavit merely identifies the affiant as DSS counsel and affirms that notice was run for three consecutive weeks in The Duplin County Times on the dates listed. The affidavit did not satisfy Rule 4(j1) because it included no statement of facts regarding diligent attempts to locate respondent-father. Cotton , 160 N.C. App. at 703, 586 S.E.2d at 808. We further note DSS adduced no evidence of its compliance with the rule at the termination hearing. Accordingly, the service of respondent-father by publication was invalid. Id. at 704, 586 S.E.2d at 808. ("As service by publication on defendant was invalid, the trial court did not have personal jurisdiction over [respondent-father].").
Despite a defect in service, "a court 'may properly obtain personal jurisdiction over a party who consents or makes a general appearance[.]' " In re C.A.C. , 222 N.C. App. at 688, 731 S.E.2d at 545 (quoting In re K.J.L. , 363 N.C. 343, 346, 677 S.E.2d 835, 837 (2009) ). " '[A]ny act which constitutes a general appearance obviates the necessity of service of summons and waives the right to challenge the court's exercise of personal jurisdiction over the party making the general appearance.' " In re A.J.M. , 177 N.C. App. 745, 752, 630 S.E.2d 33, 37 (2006) (quoting In re A.B.D. , 173 N.C. App. 77, 83, 617 S.E.2d 707, 712 (2005) ). Moreover, "it has long been the rule in this jurisdiction that a general appearance by a party's attorney will dispense with process and service." Williams v. Williams , 46 N.C. App. 787, 789, 266 S.E.2d 25, 27 (1980).
*809 Here, respondent-father did not attend the termination hearing and did not otherwise make a general appearance in the proceeding. Although his appointed counsel was present at calendar call the morning of the hearing, she was released by the trial court after the following exchange:
MS. OXENDINE: I have not been able to contact with [respondent-father]. We do have an interpreter. I don't think he's here yet or we can-or if we're expecting him, but I sent a letter to him that wasn't returned and hasn't responded to my letter.
THE COURT: All right. I'll come back to that in just a minute, and before I release you, I'll just ask you to step out in the lobby one last time.
MS. OXENDINE: Absolutely.
(Other matters heard 9:42 a.m. until 9:50 a.m.)
THE COURT: Ms. Oxendine, have you checked.
MS. OXENDINE: I did. He's not [inaudible ].
THE COURT: All right, then you're released. Thank you.
MS. OXENDINE: Thank you.
Contrary to the GAL's argument on appeal, counsel's mere act of notifying the court of her client's absence does not constitute a general appearance:
No instance can be found in which a party has been held to have impliedly bound himself to submission, without having asked or received some relief in the cause or participated in some step taken therein . Mere presence in the courtroom when the case is called, or examination of the papers in it filed in the clerk's office, is not enough. Nor could a conversation with plaintiff's counsel or the judge of the court, about the case, be regarded as an appearance .... The test, ... is whether the *480 defendant became an actor in the cause ....
Williams , 46 N.C. App. at 789, 266 S.E.2d at 27 (internal quotation marks and citation omitted; emphasis and ellipses in original); see also Woodard & Woodard v. Tri-State Milling Co. , 142 N.C. 100, 100, 55 S.E. 70, 71 (1906) ("The character of the appearance is to be determined by what the attorney actually did when he appeared in Court, at the call of the case.").
*810 "A judgment against a defendant is void where the court was without personal jurisdiction." Macher v. Macher , 188 N.C. App. 537, 539, 656 S.E.2d 282, 284, aff'd per curiam , 362 N.C. 505, 666 S.E.2d 750 (2008). Absent proper service of process or a waiver of service by general appearance, the trial court did not obtain personal jurisdiction over respondent-father. Accordingly, we vacate the termination order. See In re C.A.C. , 222 N.C. App. at 689, 731 S.E.2d at 545-46.[4]
VACATED.
Judges CALABRIA and INMAN concur.

A pseudonym chosen by the parties is used to protect the identity of the juvenile.

The court continued the hearing with regard to respondent-mother in order to allow DSS additional time to effect service upon her by publication. See N.C. Gen. Stat. § 1A-1, Rule 4(j1) (2017).

As ordered by the trial court, DSS filed a petition for termination of respondents' parental rights. We note DSS could have filed a motion in the ongoing neglect and dependency proceeding under N.C. Gen. Stat. § 7B-1102(a) (2017). Absent circumstances listed in N.C. Gen. Stat. § 7B-1102(b) (2017), a motion is subject only to the notice requirements of N.C. Gen. Stat. § 7B-1106.1 (2017) and may be served by the less exacting methods authorized by N.C. Gen. Stat. § 1A-1, Rule 5(b) (2017), rather than Rule 4(j). However, as DSS did not comply with even the lesser notice and service requirements for a motion in the cause, its decision to proceed by petition is of no consequence.

In light of our holding, we do not address respondent-father's additional claim that he was denied effective assistance of counsel.